**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| AIOFIMI S. MARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:18CV161 |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social | ) | |
| Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND RECOMMENDATION</u>
## <u>OF UNITED STATES MAGISTRATE JUDGE</u>

Plaintiff, Aiofimi S. Martin, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 8 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 11, 13; <u>see also</u> Docket Entry 12 (Plaintiff's Memorandum); Docket Entry 14 (Defendant's Memorandum); Docket Entry 15 (Plaintiff's Reply). For

---

[1] The United States Senate confirmed Andrew M. Saul as the Commissioner of Social Security on June 4, 2019, and he took the oath of office on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Nancy A. Berryhill as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

the reasons that follow, the Court should enter judgment for Defendant.

## I.  PROCEDURAL HISTORY

Plaintiff applied for DIB, alleging a disability onset date of November 15, 2006.  (Tr. 329-32.)  Upon denial of that application initially (Tr. 124-35, 176-79) and on reconsideration (Tr. 136-50, 181-84), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 186).  Plaintiff, her non-attorney representative, and a vocational expert ("VE") attended the hearing.  (Tr. 76-123.)  The ALJ subsequently determined that Plaintiff did not qualify as disabled under the Act.  (Tr. 151-65.) The Appeals Council granted Plaintiff's request for review and remanded the case for further administrative proceedings, including reevaluation of the impact of Plaintiff's respiratory disorder and the opinion of consultative examiner Dr. William Link.  (Tr. 171-75, 243-50, 309-13.)

The ALJ convened a second hearing, which Plaintiff, her non-attorney representative, and a VE attended.  (Tr. 35-75.)  The ALJ again ruled that Plaintiff failed to qualify as disabled.  (Tr. 9-23.)  The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 328, 536-39), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings:

1.   [Plaintiff] last met the insured status requirements of the . . . Act on September 30, 2016.

2.   Through September 30, 2016, [Plaintiff] engaged in substantial gainful activity during the following periods: October 2014 through December 2014.

. . .

3.   However, there has been a continuous 12-month period(s) during which [Plaintiff] did not engage in substantial gainful activity.  The remaining findings address the period(s) [Plaintiff] did not engage in substantial gainful activity.

. . .

4.   Through the date last insured, [Plaintiff] had the following severe impairments: disorders of the back, other disorders of the respiratory system, obesity, anxiety, and affective disorders.

. . .

5.   Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

6.   . . . [T]hrough the date last insured, [Plaintiff] had the residual functional capacity to perform light work . . . except she requires a sit/stand option while remaining on task; she can frequently operate hand controls bilaterally; frequently reach overhead with the bilateral upper extremities; frequently handle, finger, and feel bilaterally; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; limited to hearing and understanding simple oral instructions; no work at unprotected heights; can occasionally work around moving mechanical parts; can occasionally work in dust, odors, fumes and pulmonary irritants; can occasionally work in vibration; understand, remember and carryout [sic] instructions is limited to perform [sic] simple, routine tasks; use

judgment is limited to simple work-related decisions; and
dealing with changes in the work setting is limited to
simple work-related decisions.

. . .

7. Through the date last insured, [Plaintiff] was
unable to perform any past relevant work.

. . .

11. Through the date last insured, considering
[Plaintiff's] age, education, work experience, and
residual functional capacity, there were jobs that
existed in significant numbers in the national economy
that [Plaintiff] could have performed.

. . .

12. [Plaintiff] was not under a disability, as defined
in the . . . Act, at any time from August 9, 2014, the
alleged onset date, through September 30, 2016, the date
last insured.

(Tr. 14-23 (internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security
Commissioner's denial of social security benefits." Hines v.
Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope
of . . . review of [such a] decision . . . is extremely limited."
Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has
not established entitlement to relief under the extremely limited
review standard.

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard."  Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted).  "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence."  Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]."  Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted).  "Where conflicting evidence allows reasonable minds to differ as to

whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into

_____

[2] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs

_____

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

## B. Assignments of Error

Plaintiff asserts that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ failed to either accommodate or reject the limitations assessed by Dr. [William] Link and [Clyde A.] Collins[, M.A., C.A.S.]" (Docket Entry 12 at 16 (bold font and single-spacing omitted); see also Docket Entry 15 at 2-5);[6]

2) the ALJ failed to provide "a legally sufficient basis for rejecting [Plaintiff's] testimony" (Docket Entry 12 at 20 (bold font and single-spacing omitted); see also Docket Entry 15 at 5-6); and

3) "the ALJ failed to properly account for all of [Plaintiff's] mental limitations" in the RFC (Docket Entry 12 at 25 (bold font and single-spacing omitted); see also Docket Entry 15 at 6-7).

---

[5] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

[6] Pin citations to Plaintiff's filings refer to the page numbers that appear in the footer appended to those filings upon their docketing in the CM/ECF system (not to the roman and arabic numerals originally used to paginate those filings).

Defendant contends otherwise and seeks affirmance of the ALJ's decision.  (Docket Entry 14 at 4-10.)

## 1. Opinions of Dr. Link[7]

Plaintiff's first assignment of error states that "[t]he ALJ failed to either accommodate or reject the limitations assessed by Dr. Link."  (Docket Entry 12 at 16 (bold font and single-spacing omitted); <u>see also</u> Docket Entry 15 at 2-5.)  More specifically, Plaintiff disputes the reasons cited by the ALJ for discounting Dr. Link's opinions as "legally insufficient."  (Docket Entry 12 at 18.)  Plaintiff has not established a basis for relief.

On November 14, 2014, Dr. Link oversaw a consultative psychological evaluation of Plaintiff (Tr. 743-47), and diagnosed Plaintiff with "[d]epressive disorder due to another medical condition with depressive features" (Tr. 746).  As a result of that impairment, Dr. Link opined that Plaintiff "demonstrate[d] the ability to understand, retain and follow simple oral instructions as well as written instructions without intervention," and could "sustain attention well enough to perform simple repetitive tasks for 30 minute periods of time."  (<u>Id.</u>)  Dr. Link further concluded that Plaintiff could "relate with fellow workers and supervisors in smaller work settings, but m[ight] have difficulty in medium to

_____

[7]  Mr. Collins performed the consultative examination in question; however, Dr. Link signed the examination report as the supervising psychologist. (<u>See</u> Tr. 747.)  For ease of reading, this Recommendation refers to the opinions as those of Dr. Link.

large size work settings" and would "have difficulty tolerating stressors and pressures in larger work settings."  (Id.)

The ALJ discussed Dr. Link's opinions, and then afforded them "partial weight," noting that Dr. Link based his opinions "on a comprehensive but one-time psychological examination of [Plaintiff]."  (Tr. 21.)  The ALJ further found that "nothing in the record [] support[ed] that [] [Plaintiff] can only sustain attention for 30-minute periods, as only mild distractibility was noted."  (Id.)  Plaintiff challenges both of the ALJ's rationales for discounting Dr. Link's opinions.  (See Docket Entry 12 at 17-18; Docket Entry 15 at 2-5.)

Consultative examiners such as Dr. Link do not constitute treating sources under the regulations, see 20 C.F.R. § 404.1527(c)(2), and thus their opinions, as a general proposition, do not warrant controlling weight, Turberville v. Colvin, No. 1:11CV262, 2014 WL 1671582, at *6 (M.D.N.C. Apr. 23, 2014) (unpublished), recommendation adopted, slip op. (M.D.N.C. May 15, 2014) (Eagles, J.).  However, the ALJ must nevertheless evaluate consultative opinions using the factors outlined in the regulations, and expressly indicate and explain the weight he or she affords to such opinions.  See 20 C.F.R. § 404.1527(c) ("Regardless of its source, [the ALJ] will evaluate every medical opinion [he or she] receive[s]" and where an opinion does not warrant controlling weight, the ALJ must "consider all of the . . .

factors [in 20 C.F.R. § 404.1527(c)(1)-(6)] in deciding the weight [to] give to _any_ medical opinion." (emphasis added)).

Plaintiff argues that "the first reason that the ALJ gave, that the opinion of . . . Dr. Link was based only on a one-time evaluation, was not a legally sufficient reason." (Docket Entry 12 at 17-18.) According to Plaintiff, "[w]hile the frequency of interaction between a medical source and a claimant is relevant, it is only one of several factors that an ALJ should consider in weighing medical opinion evidence, including supportability and consistency with the record." (_Id._ at 18 (citing 20 C.F.R. § 404.1527(c)).) Plaintiff's argument fails for the simple reason that the ALJ did not _solely_ rely on Dr. Link's status as a one-time examiner to discount his opinions. (_See_ Tr. 21.) Rather, the ALJ also found that Dr. Link's own finding of _mild_ distractibility did not support his opinion that Plaintiff could only pay attention for 30-minute periods of time. (_See id._; _see also_ Tr. 745, 746.)

Plaintiff also contends that "the ALJ's bare assertion that the opinion of . . . Dr. Link was not supported by the record does not make it so." (Docket Entry 12 at 18.) More specifically, Plaintiff maintains that the ALJ's decision does not satisfy the ALJ's obligation "to show [the ALJ's] work and to present findings and determinations sufficiently articulated to permit meaningful judicial review" (_id._ (citing _Testamark v. Berryhill_, 736 F. App'x 395 (4th Cir. 2018))); however, as documented above, the ALJ

specifically noted that Dr. Link's own finding that Plaintiff displayed <u>mild</u> distractibility contradicted Dr. Link's opinion that Plaintiff could only sustain attention for 30-minute periods. (Tr. 21.)

Moreover, elsewhere in the ALJ's decision, she further detailed evidence that undermined Dr. Link's opinion regarding Plaintiff's attention span:

> With regard to [Plaintiff's] mental impairments, the record shows that in a November 2014 psychological consultative examination performed by . . . . [Dr. Link], [Plaintiff] reported that she had been depressed since 2006. She was noted to be polite and cooperative, and her hygiene and grooming were noted to be exemplary. [Plaintiff] reported symptoms including difficulty focusing, fatigue, easy frustration, and irritableness. However, on mental status examination, [Plaintiff] was <u>alert and responsive to tasks</u>. Her thought processing was coherent and there was no evidence of loose associations or tangential procession. Although mild distractibility was noted, verbal redirection was effecting [sic] in refocusing attention to tasks. She was diagnosed with depressive disorder.
>
> She was also diagnosed with depressive disorder by her primary care provider and she reported anxiety. However, [Plaintiff] reported no depression in October 2015, and she admitted that <u>she had not sought treatment from a mental health specialist</u>.

(Tr. 19 (emphasis added) (internal citations omitted).) That analysis also suffices to show the ALJ's work and to permit judicial review. <u>See</u> <u>McCartney v. Apfel</u>, 28 F. App'x 277, 279-80 (4th Cir. 2002) (rejecting challenge to ALJ's finding for lack of sufficient detail where other discussion in decision adequately supported finding and stating "that the ALJ need only review

medical evidence once in his decision"); <u>Kiernan v. Astrue</u>, No. 3:12CV459-HEH, 2013 WL 2323125, at *5 (E.D. Va. May 28, 2013) (unpublished) (observing that, where an "ALJ analyzes a claimant's medical evidence in one part of his decision, there is no requirement that he rehash that discussion" in other parts of his analysis).[8]

In Plaintiff's Reply, she argues for the <u>first</u> time that "[t]he ALJ did not accommodate or reject [Dr. Link's] limitation of difficulty interacting with co-workers and supervisors and tolerating the stress and pressure of [the] workplace in a large setting." (Docket Entry 15 at 4; <u>see also</u> <u>id.</u> (observing that "[t]he ALJ did not impose any limitation on [Plaintiff's] ability to interact with co-workers, supervisors, or the public").) That argument fails for three reasons.

First, the Court should not consider an argument, as here, raised for the first time in a reply brief. "Reply briefs . . . may not inject new grounds . . . [and an] argument [that] was not

---

[8] Plaintiff asserts that 1) the opinion of the state agency psychological consultant at the reconsideration level of review that Plaintiff suffered <u>mild</u> limitation in her ability to perform daily activities, maintain social functioning, and maintain concentration, persistence, or pace ("CPP") (Docket Entry 12 at 18-19 (citing Tr. 142)), and 2) Plaintiff's own testimony "that her depressive symptoms make it hard for her to get out of bed and to function" (<u>id.</u> at 19 (citing Tr. 106, 111)), support Dr. Link's opinions. However, Plaintiff fails to explain how <u>mild</u> limitations in the broad areas of mental functioning support Dr. Link's opinions and, more particularly, how <u>mild</u> limitation in CPP supports Dr. Link's rather extreme opinion that Plaintiff could only sustain attention for 30 minutes at a time. Moreover, the ALJ found Plaintiff's testimony "not entirely consistent with the medical evidence and other evidence in the record" (Tr. 18) and, as discussed in more detail below, the ALJ supported that finding with substantial evidence.

contained in the main brief . . . is not before the Court." <u>Triad</u>
<u>Int'l Maint. Corp. v. Aim Aviation, Inc.</u>, 473 F.Supp.2d 666, 670
n.1 (M.D.N.C. 2006) (citing M.D.N.C. LR7.3(h)) (recommendation of
Eliason, M.J., adopted by Beaty, J.); <u>accord, e.g.</u>, <u>Jarvis v.</u>
<u>Stewart</u>, No. 1:04CV642, 2005 WL 3088589, at *1 (M.D.N.C. Nov. 17,
2005) (unpublished) (Osteen, Sr., J.) ("[I]t is not appropriate to
present such new argument in a reply." (citing M.D.N.C. LR7.3(h))).

Second, Plaintiff's argument overlooks the fact that, unlike
in the first decision where the ALJ accorded Dr. Link's opinions
"great weight" but then failed to explain why the ALJ did not adopt
all of Dr. Link's opinions (Tr. 162; <u>see also</u> Tr. 173 (Appeals
Council's remand, in part, on that basis)), the ALJ here assigned
Dr. Link's opinions only "partial weight" (Tr. 21). The ALJ thus
made clear that she did not fully credit all of Dr. Link's
opinions.

Third, with regard to Plaintiff's ability to interact with
others in the workplace, Dr. Link opined only that Plaintiff "<u>may</u>
have difficulty [relating with fellow workers and supervisors] in
medium to large size work settings." (Tr. 746 (emphasis added).)
Plaintiff does not explain why such an equivocal opinion would have
compelled the ALJ to adopt limitations on Plaintiff's ability to
interact with others, particularly where the ALJ accorded only
"partial weight" to Dr. Link's opinions (Tr. 21).

15

In sum, Plaintiff's first assignment of error fails as a matter of law.

## 2. Plaintiff's Subjective Symptom Reporting

Next, Plaintiff maintains that the ALJ failed to provide "a legally sufficient basis for rejecting [Plaintiff's] testimony." (Docket Entry 12 at 20 (bold font and single-spacing omitted); see also Docket Entry 15 at 5-6.) Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304, at *5 (Oct. 25, 2017) ("SSR 16-3p") (consistent with the Commissioner's regulations) adopts a two-part test for evaluating a claimant's statements about symptoms. See SSR 16-3p, 2017 WL 5180304, at *3; see also 20 C.F.R. § 404.1529.[9] First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p, 2017 WL 5180304, at *3. A claimant must provide "objective medical evidence from an acceptable medical source to

_____

[9] Applicable to ALJ decisions on or after March 28, 2016, the Social Security Administration superceded Social Security Ruling 96-7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims, 1996 WL 374186 (July 2, 1996) ("SSR 96-7p"), with SSR 16-3p. The new ruling "eliminat[es] the use of the term 'credibility' from . . . sub-regulatory policy, as [the] regulations do not use this term." Id. at *1. The ruling "clarif[ies] that subjective symptom evaluation is not an examination of the individual's character," id., and "offer[s] additional guidance to [ALJs] on regulatory implementation problems that have been identified since [the publishing of] SSR 96-7p," id. at *1 n.1. The ALJ's decision in this case postdates the effective date of SSR 16-3p (see Tr. 23) and, thus, this Recommendation will apply SSR 16-3p to Plaintiff's argument regarding the ALJ's subjective symptom evaluation.

establish the existence of a medically determinable impairment that could reasonably be expected to produce [the] alleged symptoms." Id. Objective medical evidence consists of medical signs ("anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques") and laboratory findings "shown by the use of medically acceptable laboratory diagnostic techniques." Id.

Upon satisfaction of part one by the claimant, the analysis proceeds to part two, which requires an assessment of the intensity and persistence of the claimant's symptoms, as well as the extent to which those symptoms affect his or her ability to work. See id. at *4. In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id. (emphasis added). Where relevant, the ALJ will also consider the following factors in assessing the extent of the claimant's symptoms at part two:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

Id. at *7-8. The ALJ cannot "disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." Id. at *5 (emphasis added).

In this case, the ALJ found for Plaintiff on part one of the inquiry, but ruled, in connection with part two, that her "statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the ALJ's] decision." (Tr. 18.) The ALJ provided the following analysis to support the part two finding:

While [Plaintiff] alleged disabling limitations due to her impairments, the objective medical evidence fails to support such a finding in this case. The record showed that [Plaintiff] was treated with pain management and no surgery was recommended. In addition, diagnostic tests only showed mild degeneration. Moreover, [Plaintiff]

18

admitted that she had not sought specialist treatment for
her mental health conditions.  In addition, evidence
regarding [Plaintiff's] daily activities is not limited
to the extent one would expect, given the complaints of
disabling symptoms and limitations.  The record shows
that [Plaintiff] was able to cook, do laundry, and clean
her house regularly [(Tr. 436-44)].  Consideration of
these factors also leads me to conclude that
[Plaintiff's] allegations of disabling symptoms and
limitations cannot be accepted, and that the [RFC]
finding in this case is justified.

(Tr. 20.)

Plaintiff first asserts that the ALJ "failed to consider the
record as a whole" (Docket Entry 12 at 21) and instead engaged in
a "selective recitation of the record" (id. at 22).  More
specifically, Plaintiff contends that the ALJ ignored evidence that
Plaintiff "engaged in physical therapy and received facet blocks
and radiofrequency denervation procedures for her pain[,] . . .
consistently ha[d] tenderness on exam and a decreased range of
motion[,] . . . and received narcotic pain medication to manage her
symptoms."  (Id. at 21 (citing Tr. 546, 549, 574, 593, 600, 602,
611, 615, 624, 639, 646, 650, 652, 657, 669, 675, 694, 711, 736,
758, 759, 790, 808, 814, 832, 837, 843, 850, 864, 873, 977, 884,
885).)

Plaintiff's contentions gloss over the ALJ's discussion of the
medical evidence, in which the ALJ expressly noted that Plaintiff
reported "some tenderness to palpation of her neck" and "minimal
low back tenderness" (Tr. 19), that Plaintiff had "received
radiofrequency denervation of lumbar bilateral L3, L4, and L5 for

19

her lumbar pain" (id.), and that Plaintiff's pain management physician had "prescribed narcotic pain medication and epidural steroid injections" (id.). Plaintiff correctly notes that the ALJ did not expressly discuss any instances on which Plaintiff displayed "a decreased range of motion." (Docket Entry 12 at 21; see also Tr. 19-21.) However, of the 23 transcript pages Plaintiff cites as supportive of her assertion that she "consistently had . . . a decreased range of motion" (Docket Entry 12 at 21 (emphasis added) (citing Tr. 549, 574, 593, 600, 602, 611, 615, 624, 646, 657, 736, 759, 790, 808, 814, 832, 837, 843, 850, 864, 873, 877, 884)), only seven pages reflect any decrease in range of motion and none of those instances of reduced motion occurred during the relevant period in this case, i.e., from Plaintiff's amended onset date of August 9, 2014, to her date last insured ("DLI") of September 30, 2016 (see Tr. 574 (physical therapy note documenting 25 percent reduction in lumbar forward and lateral flexion in September 2011), 615 (primary care physician treatment record indicating decreased range of motion in neck in March 2011), 647 (pain management clinic record indicating lumbar extension and rotation decreased in July 2014), 658 (pain management report showing decreased lumbar extension and rotation in March 2014), 864 (primary care physician office visit containing reference to "limited [range of motion]" but not identifying affected joint(s) in May 2017), 873 (same in February 2017), 878 (same in January

20

2017)).  Under such circumstances, Plaintiff has not shown that she "consistently" experienced "decreased range of motion" (Docket Entry 12 at 21) and thus the ALJ did not err by failing to expressly discuss the sporadic instances, either predating or postdating the relevant period, when examinations reflected decreased range of motion.  See Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (observing that "'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision'" (quoting Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005))).[10]

Plaintiff additionally alleges that the "ALJ [] consider[ed] the *type* of activities [Plaintiff] c[ould] perform without also considering the *extent* to which she c[ould] perform them." (Docket Entry 12 at 24.)  According to Plaintiff, the ALJ "failed to discuss how long or how often [Plaintiff] [wa]s able to engage in [daily] activities[,] . . . did not consider that [Plaintiff] had assistance from her children in performing household chores and that the assistance that she required increased over time." (Id.) Plaintiff maintains that "she should not be penalized for

_____

[10]  Plaintiff also argues that "[t]he ALJ did not explain how or why" the fact that Plaintiff "had not sought treatment from a specialist for her mental health . . . undermined her testimony about her pain." (Docket Entry 12 at 22.) However, the ALJ obviously did not cite Plaintiff's lack of mental health treatment as evidence inconsistent with her reports of pain, but rather with her allegations of depression.  (See Tr. 20; see also Tr. 18 ("[Plaintiff] also alleged depression.  She reported that she took psychotropic medication but admitted that she had not sought specialist treatment.").)

21

attempting to lead a normal life in the face of her limitations"
(id. (citing Lewis v. Berryhill, 858 F.3d 858, 868 n.3 (4th Cir.
2017))), and that "[t]he evidence does not support a conclusion
that she engaged in any of [her daily] activities in a manner . . .
consistent with substantial gainful activity" (id. (citing Orn v.
Astrue, 495 F.3d 625, 639 (9th Cir. 2007))).

Here, the record contains multiple statements from Plaintiff
regarding her ability to engage in daily activities which, to some
extent, conflict with each other. On August 24, 2014,
approximately two weeks after her amended onset date, Plaintiff
completed a Function Report on which she indicated that she worked
at a job from 8:30 a.m. until 5:00 p.m. Monday through Friday
(see Tr. 436), attended Bible study, prayer services, and other
activities at church three times per week (see id.; see also Tr.
440), took care of her son's needs (see Tr. 437), cooked full
course meals two to three times per week for one to two hours at a
time (see Tr. 438), did her laundry and cleaned the house for two
hours at a time twice per week (although her son helped
"sometimes") (id.), drove a car (see Tr. 439), and shopped for
groceries once a month for one hour (see id.). The ALJ expressly
relied upon that report in finding that Plaintiff "was able to
cook, do laundry, and clean her house regularly [(Tr. 436-44)]."
(Tr. 20.)

After denial of Plaintiff's claim at the initial level of review, Plaintiff completed a second Function Report on November 4, 2014, indicating that she made her bed (see Tr. 463), cooked full course meals three times per week for two hours at a time (see Tr. 465), did her laundry but did not clean her house "due to pain" (id.), drove a car (see Tr. 466), shopped for groceries whenever needed (see id.), and attended church weekly (see Tr. 467). At the first hearing before the ALJ on October 20, 2016 (shortly after her DLI), Plaintiff testified that even on a "bad day" she could engage in "simple" activities such as washing dishes and cooking breakfast (Tr. 84), and that she also cooked "maybe" once per week, did laundry about once per month, straightened her room, cleaned her shower with her son's help, grocery shopped once per month, and attended church (Tr. 108). Subsequently, at the second hearing on August 3, 2017, approaching one year after her DLI, Plaintiff stated that she attended church on Sundays (see Tr. 63) and grocery shopped with her son (see Tr. 58), but that her son did all of the housework and her daughter did all of the cooking (see Tr. 62).

Given the differing statements from Plaintiff regarding both the type and the frequency of daily activities she could perform, the ALJ fulfilled her duty to weigh the conflicting evidence and determine which of Plaintiff's statements most harmonized with the record evidence. See Craig, 76 F.3d at 589 ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant

is disabled, the responsibility for that decision falls on the [ALJ]." (internal quotation marks omitted)). Furthermore, the ALJ's conclusion that, during the relevant period, Plaintiff remained able to "cook, do laundry, and clean her house regularly" (Tr. 20) constitutes a fair synthesis of the differing evidence on the subject, particularly in light of the fact that Plaintiff did not assert that she lacked the ability to cook, do the laundry, or perform <u>any</u> household chores until her second hearing, nearly one year after her DLI (<u>see</u> Tr. 58, 62-63). Under such circumstances, the Court should not "undertake to reweigh [the] conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]," <u>Craig</u>, 76 F.3d at 589.

In short, Plaintiff's second issue on review falls short.

### 3. Mental RFC

Lastly, Plaintiff contends that "the ALJ failed to properly account for all of [Plaintiff's] mental limitations" in the RFC. (Docket Entry 12 at 25 (bold font and single-spacing omitted); <u>see also</u> Docket Entry 15 at 6-7.) More specifically, Plaintiff argues that, despite the ALJ's finding that Plaintiff "ha[d] moderate difficulties in concentrating, persisting, or maintaining pace [('CPP')]" (Docket Entry 12 at 27 (referencing Tr. 17)), "the ALJ did not determine [Plaintiff's] ability to stay on task" in violation of <u>Mascio v. Colvin</u>, 780 F.3d 632 (4th Cir. 2015) (Docket Entry 12 at 27). Additionally, Plaintiff points out that,

notwithstanding the ALJ's finding that Plaintiff had mild limitation in interacting with others, "[t]he ALJ did not limit [Plaintiff's] interactions with others or provide any reasons for the rejection of such limitations." (Id. at 28 (referencing Tr. 17, 18).) Plaintiff further notes that, because the VE testified that no available jobs would exist for an individual whose symptoms caused him or her to remain off-task for 15 percent of the work day (see Tr. 73), and "the ALJ provided no explanation of how [Plaintiff's] moderate limitation in [CPP] would impact her RFC, it is unknown whether her [CPP] limitation would result in being off task [15] percent of the time or more" (Docket Entry 12 at 30). Plaintiff's contentions miss the mark.

The Fourth Circuit has held that "the ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in [CPP]." Mascio, 780 F.3d at 638. However, as a neighboring district court has explained:

> Mascio does not broadly dictate that a claimant's moderate impairment in [CPP] always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision . . . . An ALJ may account for a claimant's limitation with [CPP] by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony,

> medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Jones v. Colvin, No. 7:14CV273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015) (magistrate judge's recommendation adopted by district judge) (unpublished) (emphasis added); see also Hutton v. Colvin, No. 2:14CV63, 2015 WL 3757204, at *3 (N.D.W. Va. June 16, 2015) (unpublished) (finding reliance on Mascio "misplaced," because ALJ "gave abundant explanation" for why unskilled work adequately accounted for claimant's moderate limitation in CPP, by highlighting the claimant's daily activities and treating physicians' opinions). Here, the ALJ's decision provides a sufficient explanation as to why restrictions to simple oral instructions, simple routine tasks, and simple work-related decisions (see Tr. 18) sufficiently accounted for Plaintiff's moderate deficit in CPP.

First, the ALJ noted Plaintiff's testimony "that pain caused difficulty with focus and concentration" (Tr. 17; see also Tr. 19 (citing Plaintiff's report to Dr. Link of "symptoms including difficulty focusing")), but found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e ALJ's] decision" (Tr. 18). Moreover, as discussed above, the ALJ

did not err in his analysis of Plaintiff's subjective symptoms and supported that analysis with substantial evidence.

Second, the ALJ summarized the pertinent evidence of record, making the following observations:

- despite Plaintiff's reports of "unrelenting pain . . ., on physical examination in September 2014, [Plaintiff] was ambulating normally," and "had a full range of motion in her neck" with normal "muscle strength and tone" (Tr. 19; see also Tr. 736-37);

- "[i]n August 2016, only minimal low back tenderness was noted and there was no tenderness to palpation or muscle spasms . . . [as well as] negative straight leg raise testing" (Tr. 19; see also Tr. 884);

- at the November 2014 consultative psychological examination, "[Plaintiff] was alert and responsive to tasks[, h]er thought processing was coherent and there was no evidence of loose associations or tangential procession[, and a]lthough mild distractibility was noted, verbal redirection was effecting [sic] in refocusing attention to tasks" (Tr. 19; see also Tr. 745);

Third, the ALJ discussed and weighed the opinion evidence as it related to Plaintiff's ability to function mentally. (See Tr. 20-21.) In that regard, the ALJ specifically discredited Dr. Link's opinion that Plaintiff could sustain attention well enough to perform simple repetitive tasks for only 30-minute periods of time, noting that neither Dr. Link's finding of mild distractibility nor the remainder of the record supported such an extreme limitation. (Tr. 21; see also Tr. 745, 746.) That explanation by the ALJ further supports her conclusion that,

despite moderate limitation in CPP, Plaintiff remained able to maintain CPP long enough to perform simple tasks.

Under these circumstances, the ALJ adequately explained why a restriction to simple oral instructions, simple routine tasks, and simple work-related decisions (see Tr. 18) sufficiently accounted for Plaintiff's moderate limitation in CPP. See Whiteside v. Berryhill, No. 1:18CV176, 2019 WL 1639936, at *5 (W.D.N.C. Apr. 16, 2019) (unpublished) (rejecting the plaintiff's argument under Mascio where ALJ's analysis of the plaintiff's subjective symptom reporting and objective medical evidence, as well as ALJ's discounting of consultative examiner's opinions, sufficiently "explained why [the p]laintiff's limitations in [CPP] did not alter her RFC").

Plaintiff's argument that the ALJ failed to include limitations on Plaintiff's interactions with others in the RFC to account for Plaintiff's mild limitation in interacting with others fares no better. (Docket Entry 12 at 28.) As an initial matter, it remains unclear whether Mascio applies to mild as opposed to moderate limitations, and to limitations in broad functional areas other than CPP. Although some decisions have remanded for an ALJ's failure to adequately account for mild limitations in the broad areas of functioning, see McMichael v. Colvin, No. 1:15CV528, 2016 WL 4556768, at *2-6 (M.D.N.C. Aug. 31, 2016) (unpublished) (Webster, M.J.) (CPP), recommendation adopted, slip op. (M.D.N.C.

Sept. 29, 2016) (Schroeder, J.); <u>Ashcraft v. Colvin</u>, No. 3:13CV417, 2015 WL 9304561, at *6-11 (W.D.N.C. Dec. 21, 2015) (unpublished) (daily activities, social functioning, and CPP), many decisions have ruled to the contrary, <u>see, e.g.</u>, <u>Morrison v. Berryhill</u>, No. 1:16CV337, 2018 WL 1311207, at *5 (W.D.N.C. Feb. 8, 2018) (unpublished) (finding that the plaintiff's "heavy reliance on <u>Mascio</u> . . . [wa]s misplaced" and noting that, since "about a month after the <u>Mascio</u> decision," many cases in the Western District of North Carolina "have held that the requirements of <u>Mascio</u> do not necessarily apply where a plaintiff is found to have *mild* limitations in CPP"), <u>recommendation adopted</u>, 2018 WL 1308139 (W.D.N.C. Mar. 13, 2018) (unpublished); <u>Williamson v. Berryhill</u>, No. 7:16CV284, 2017 WL 4293408, at *5 (E.D.N.C. Sept. 27, 2017) (unpublished) (deeming the "plaintiff's reliance on <u>Mascio</u> [] inapt" where ALJ found "only *mild* limitations in activities of daily living, social functioning, or CPP"); <u>Guest v. Colvin</u>, No. 1:15CV776, 2016 WL 4007612, at *6 (M.D.N.C. July 26, 2016) (unpublished) (expressing "doubt [] as to whether <u>Mascio</u>'s holding with regards to [CPP] should apply to" a case involving mild limitations in social functioning, "particularly given that the Fourth Circuit made clear its CPP-based holding rested on the distinction between the ability to perform simple tasks and the ability to stay on task, and such a distinction does not clearly apply in the social functioning context" (internal citation

omitted), _recommendation adopted_, slip op. (M.D.N.C. Aug. 24, 2016) (Schroeder, J.).

Moreover, even assuming _Mascio_ applies to 1) _mild_ limitations in the broad areas of functioning (i.e., the lowest of four levels above "none"), and 2) functional areas other than CPP, Plaintiff has not shown prejudicial error here. The ALJ afforded only partial weight to Dr. Link's opinions (_see_ Tr. 21) and thus did not adopt his opinion that Plaintiff "_may_ have difficulty [relating with fellow workers and supervisors] in medium to large size work settings" (Tr. 746 (emphasis added)). Furthermore, Plaintiff neither has identified the restriction on interaction with others the ALJ should have included in the RFC, nor has explained why, even with any such restriction on interaction in the RFC, she would remain unable to perform the retail marker and router jobs cited by the VE and adopted by the ALJ at step five of the SEP (_see_ Tr. 22-23, 70-72). (_See_ Docket Entry 12 at 25-30; _see also_ Docket Entry 15 at 6-7.) The codes in the _Dictionary of Occupational Titles_ ("_DOT_") for those jobs contain a fifth digit of "8," _DOT_, No. 209.587-034 (Marker), 1991 WL 671802 (G.P.O. 4th ed. rev. 1991); _DOT_, No. 222.587-038 (Router), 1991 WL 672123, reflecting the lowest possible level of human interaction that exists in the labor force, _see DOT_, App'x B (Explanation of Data, People, and Things), 1991 WL 688701. "This designated level of interaction is compatible with an RFC limiting a claimant to only _occasional_

contact with coworkers, supervisors, and the public." Cobb v. Colvin, No. 2:13CV115TCM, 2014 WL 6845850, at *19 (E.D. Mo. Dec. 3, 2014) (unpublished) (emphasis added). As a result, no reason exists to believe remand for the purpose of further addressing mild limitation in social interaction would alter the outcome of this case. See generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").

Accordingly, Plaintiff's third and final issue on review does not entitle her to reversal or remand.

### III. CONCLUSION

Plaintiff has not established grounds for relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, Plaintiff's Motion for Judgment Reversing or Modifying the Decision of the Commissioner of Social Security (Docket Entry 11) be denied, and Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

August 7, 2019